IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| EQT CORPORATION, ) | Civil Action No. 2:25-CV-832-RJC-CBB |
| ) | |
| Plaintiff, ) | |
| ) | United States District Judge |
| vs. ) | Robert J. Colville |
| ) | |
| ROBERT R. WINGO, ) | United States Magistrate Judge |
| ) | Christopher B. Brown |
| Defendant, ) | |

**MEMORANDUM OPINION[1]
ON DEFENDANT'S MOTION TO STAY/TRANSFER ECF No. 30**

**CHRISTOPHER B. BROWN, United States Magistrate Judge.**

## I.    Introduction

Plaintiff EQT Corporation ("EQT") initiated this civil action against its

former employee Robert R. Wingo ("Wingo") alleging that he violated restrictive

covenants in EQT's Executive Severance Plan (the "Plan") when he took a new

position with its competitor The Williams Companies ("Williams").  ECF No. 1.

---

[1]    Motions to stay or transfer involve a non-dispositive pretrial matter that a United States Magistrate Judge may decide under 28 U.S.C. § 636(b)(1)(A).  *See Noble v. City of Erie*, No. CV 18-006, 2018 WL 4963614, at *2 (W.D. Pa. Oct. 15, 2018), *aff'd*, No. 1:18-CV-6, 2019 WL 13555898 (W.D. Pa. Jan. 29, 2019) (motion to stay non-dispositive); *In re Milo's Kitchen Dog Treats Consol. Cases*, No. 12-cv-1011, 2013 WL 6628636, at *4 n.2 (W.D. Pa. Dec. 17, 2013) (motion to stay); *Washam v. Shapiro*, No. 1:19-CV-838, 2019 WL 2137268, at *3 (M.D. Pa. May 16, 2019) (motion to transfer non-dispositive) (collecting cases); *McManus v. Giroux*, No. 3:13-CV-1729, 2013 WL 3346848, at *2 (M.D. Pa. July 2, 2013) (motion to transfer) (collecting cases).  Appeals from Orders issued by a Magistrate Judge on non-dispositive motions are subject to the "clearly erroneous or contrary to law" standard of review.  28 U.S.C. § 636(b)(1)(A); LCvR 72.C.2.  ("Any party may object to a Magistrate Judge's determination made under this rule within fourteen (14) days after the date of service of the Magistrate Judge's order[.]").

Among other things, EQT seeks a declaratory judgment that the Plan and the restrictive covenants are valid and enforceable such that Wingo cannot work at Williams for one year following his last day with EQT.

As explained below, the Parties alerted the Court to a "sister" case in the United States District Court for the Northern District of Oklahoma (the "Oklahoma Action"). *See* NDOK at Civil Action No. 4:25-cv-00304-SEH-SH. The Oklahoma Action also involves the question of whether Wingo's new position at Williams violates the Plan's restrictive covenants. *See* NDOK ECF No. 2-1.

Presently pending before the Court is Defendant Wingo's Motion to Stay the case or Transfer the matter to the United States District Court for the Northern District of Oklahoma. ECF No. 30. This Motion is fully briefed and ripe for consideration. ECF Nos. 30-31, 37, 41.

For the reasons below, the Motion to Stay is GRANTED in part, and under the first-filed rule, the case will be STAYED until the District Court for the Northern District of Oklahoma determines the appropriate forum and the validity of the forum-selection clause under the Plan. The remaining Motions, including the Motion to Transfer, will be dismissed without prejudice for the parties to refile once the stay is lifted.

## II.    Factual and Procedural Background

EQT filed this declaratory judgment, breach of contract, and anticipatory breach of contract action against its former employee Wingo on June 17, 2025. ECF No. 1 at Counts I-II. Wingo previously served as a high-ranking executive at EQT

from 2021 until he voluntarily resigned on May 30, 2025. *Id.* at ¶¶ 1, 4. His last day with EQT was June 20, 2025. *Id.* at ¶ 41.

EQT alleges that it entered an agreement with Wingo in November 2021 that required Wingo to participate in EQT's Plan, which includes non-disclosure, non-solicitation, and non-competition covenants. *Id.* at ¶ 3. The "purpose of the Plan is to provide severance benefits to certain eligible executive-level employees of EQT . . . who are terminated from employment in certain limited circumstances." ECF No. 1-1 at 4. Additionally, the Plan states that "[n]either the adoption nor the maintenance of the Plan shall be deemed to constitute a contract, implied or expressed" between EQT and Wingo. *Id.* at 17.

EQT's primary concern is the Plan's non-compete covenant. EQT alleges the non-compete covenant requires Wingo to abstain from taking a position with a competitor where he would oversee or have "actual involvement in providing services which are competitive with the services or products provided" by EQT for one year after he leaves the company. ECF No. 1 at ¶ 36 (citing ECF No. 1-1 at 15). EQT alleges Wingo breached the Plan and the non-compete covenant by taking a role with its direct competitor, The Williams Companies ("Williams"), within the one-year window. *Id.* at ¶¶ 5, 27, 60. On June 11, 2025, EQT sent Wingo a cease and desist letter to remind him of the Plan's non-compete covenant and copied Williams. *Id.* at ¶ 43. Williams filed the Oklahoma Action the next day on June 12, 2025, and EQT then filed the present action in the Western District of Pennsylvania

on June 17, 2025.  *See* NDOK ECF No. 2-1 at 1-24; ECF No. 1.  Wingo's start date at

Williams was July 14, 2025.  ECF No. 1 at ¶ 44.

EQT seeks a declaratory judgment that the Plan and its nondisclosure, non-

solicitation, and non-competition covenants are valid, and seeks to enjoin Wingo

from working at Williams.  *Id.* at ¶¶ 6, 50.  EQT also states the Plan has a

Pennsylvania choice of law provision and a forum-selection clause selecting either

Allegheny County or the United States District Court for the Western District of

Pennsylvania, Pittsburgh Division.  *Id.* at ¶ 40 (citing ECF No. 1-1 at 18).

EQT and Wingo have filed several Motions since the start of this case.  First,

on June 25, 2025, EQT filed a Motion for Preliminary Injunction.  ECF No. 5.  Then,

on June 27, 2025, EQT filed a Motion for a Temporary Restraining Order and

Motion to Expedite Preliminary Injunction Hearing.  ECF Nos. 9, 10.  United States

District Judge Robert J. Colville denied the Motion for the TRO and Motion to

Expedite, finding that "Plaintiff [had] not met its burden of establishing the

extraordinary relief of an emergency TRO," finding "the likelihood of success and

balancing of the harms factors weigh against granting such relief at this time."

ECF No. 27.  Judge Colville also stated that in the interest of judicial economy, he

would not schedule a hearing on the Motion for Preliminary Injunction (ECF No. 5)

at that time, given that a hearing on a pending motion for preliminary injunction

was then-scheduled for July 14, 2025 before the United States District Court for the

Northern District of Oklahoma, which involved "many, if not all, of the issues raised

by EQT in this case."  *Id.*

Wingo then filed a Motion to Dismiss for Failure to State a Claim or in the Alternative to Stay or Transfer the Case to the Northern District of Oklahoma on July 7, 2025.  ECF No. 30.  EQT then filed a Renewed Motion to Expedite the Motion for Preliminary Injunction on July 16, 2025.  ECF No. 34.  On July 21, 2025, the undersigned Ordered additional briefing on Wingo's Motion to Stay/Transfer, and stated it will hold the Motion for Preliminary Injunction (ECF No. 5), the Motion to Dismiss (ECF No. 30), and the Renewed Motion to Expedite (ECF No. 34) in abeyance until further Order.  ECF No. 38.

### III.    Oklahoma Action

There is a "sister" case currently pending in the United States District Court for the Northern District of Oklahoma (the "Oklahoma Action").  Williams – Wingo's new employer – originally brought the case against EQT on June 12, 2025 in the District Court of Tulsa County in Oklahoma.  NDOK ECF No. 2-1 at 1-24.  Williams sought a TRO that precluded EQT from enforcing the Plan's restricted covenants against Wingo, which the Tulsa County District Court granted on June 17, 2025.  NDOK ECF No. 2-2 at 49.

EQT then removed the Oklahoma Action to the United States District Court for the Northern District of Oklahoma on June 18, 2025.  NDOK ECF Nos. 1-2.  On June 20, 2025, EQT also filed a Motion to Vacate the Order/Judgment of the Tulsa County District Court on the TRO.  NDOK ECF No. 7.  Williams responded by filing a Motion to Extend the TRO and a Motion for a Preliminary Injunction Hearing.  NDOK ECF Nos. 12-13.

On July 1, 2025, the District Court for the Northern District of Oklahoma granted EQT's motion to vacate the TRO, found it had personal jurisdiction over EQT, and granted William's motion to set a preliminary injunction hearing.  NDOK ECF No. 18.  That hearing was initially scheduled for July 14, 2025 but was cancelled and has not yet been rescheduled.  NDOK ECF No. 34.

Williams amended the Complaint in the Oklahoma Action on July 14, 2025, adding Wingo as a Plaintiff.  NDOK ECF No. 36.  The Parties in the Oklahoma Action have filed prolific briefing on Williams/Wingo's Motion for Protective Order (NDOK ECF Nos. 24, 28-29, 45), EQT's Motion to Stay (NDOK ECF Nos. 30, 44, 48), Williams/Wingo's Motion and Amended Motion for Preliminary Injunction (NDOK ECF Nos. 32-33, 35, 39, 46, 49), EQT's Motion to Transfer (NDOK ECF Nos. 41, 47, 51), and EQT's Motion to Dismiss (NDOK ECF Nos. 43, 50, 52).  To date, the Court in the Oklahoma Action has not issued decisions on these pending motions.

## IV.    Discussion

Defendant Wingo moves to stay/transfer the case under the first filed rule, arguing that the Northern District of Oklahoma is the proper forum to decide the matter.  ECF No. 31 at 23-26.  EQT argues in opposition that this suit in the Western District of Pennsylvania is the first filed action because the Oklahoma Action was initially filed in state Court and did not initially name Wingo as a party. ECF No. 37 at 5-9.  EQT further argues that regardless of filing date, the Oklahoma Action was an improper anticipatory suit and the forum-selection clause dictates that the case must remain here.  *Id.* at 9-13.

For the reasons stated below, the first-filed rule applies to this matter, and the case will be stayed pending a decision from the District Court for the Northern District of Oklahoma on the validity of the forum selection clause under the Plan.

### a. The First-Filed Rule

The trial court has the discretion to determine where to stay or transfer a case under the first-filed rule.  *See Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 220 (3d Cir. 2016).  Courts have broad discretion to manage cases to avoid wasteful and duplicative litigation.  *See, e.g.*, *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976).

The first-filed rule "is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority."  *Chavez*, 836 F.3d at 210.  Courts will "usually" apply the rule as the "norm, not the exception."  *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 979 (3d Cir. 1988), *aff'd,* 493 U.S. 182 (1990).  Courts are "not required to apply the rule rigidly; rather, [courts have] the discretion to consider the specific circumstances of the case."  *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 558 (M.D. Pa. 2015) (citing *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013)).  *See also Univ. of Pennsylvania*, 850 F.2d at 977 ("The letter and spirit of the first-filed rule . . . are grounded on equitable principles").

There are exceptions to the rule: "(1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5) where the later-filed action has developed further than the first-filed action; and (6) when the first filing

party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." *Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 63–64 (E.D. Pa. 2024) (citing *Univ. of Pennsylvania*, 850 F.2d at 976).  In determining whether an exception applies, "due consideration to the orderly administration of justice counsels in favor of ordinarily respecting the first-filed rule." *Koresko v. Nationwide Life Ins. Co.*, 403 F.Supp. 2d 394, 400 (E.D. Pa. 2005).

With these principles in mind, the Court now turns to the Parties' arguments.

### i. The First Filed Action

The Oklahoma Action was filed first.  Williams filed the Oklahoma Action in the District Court of Tulsa County in Oklahoma on June 12, 2025.  NDOK ECF No. 2-1 at 1-24.  EQT filed this action on June 17, 2025 in the Western District of Pennsylvania.  ECF No. 1. EQT then removed the Oklahoma Action to the federal court in the Northern District of Oklahoma the next day, on June 18, 2025.  NDOK ECF Nos. 1-2.

EQT first argues that the Court should disregard this sequence of events because the Oklahoma Action, although filed in state court first, was removed to federal court one day *after* this federal action was filed in Pennsylvania.  ECF No. 37 at 9.  Thus, EQT argues, the first filed rule does not apply.[2]  *Id.*  This Court disagrees.

---

[2]    The Court finds the cases cited by EQT on the first filed rule to be distinguishable from the case at issue.  First, the present case does not involve one matter pending in state court and one in federal court, as in *CMMI Inst. LLC v. Acme Process Grp., LLC*, No. CV 22-1214, 2023 WL 6597290

District Courts within the Circuit have held that it is the date of the filing in state court, rather than the subsequent removal date, that "matters" for purposes of the first-filed rule. *See Unlimited Tech., Inc. v. Leighton*, 266 F. Supp.3d 787, 793 (E.D. Pa. 2017) ("The better approach is to relate the removal date back to the state court filing date. Thus, we conclude that the state court filing date is the relevant date for applying the first-filed rule"); *Monzo v. Bazos*, 313 F. Supp.3d 626, 631 (E.D. Pa. 2017) (collecting cases); *L. Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 723 (E.D. Pa. 2015) ("It does not matter Tatro filed in California state court initially and the removal did not occur until after LSAC filed this action").

EQT next argues the present action was filed first because it was filed before Williams amended the Oklahoma Action Complaint. ECF No. 37 at 13. EQT says

---

(W.D. Pa. Sept. 27, 2023) and *DelphX Corp. v. Fondren*, 600 F. Supp. 3d 540 (E.D. Pa. 2022). Rather this is a case where the matter was filed in state court first *and later removed* to federal court.

The Court likewise finds *North American Communications, Inc. v. Homeowners Loan Corp.,* 2007 WL 184776, *3 (W.D. Pa 2007) distinguishable. That case held that the first-filed rule credits the date on which a state case was removed to federal court rather than the date originally filed in state court. *Id.* A close look at *Homeowners* reveals, however, that it is factually different than the case at issue. Specifically, in *Homeowners*, the actual state court complaint was not filed until after the federal complaint, which is not the case here. The state case began with a writ of summons, which was followed by the filing of a federal complaint in the Northern District of Georgia, which was followed by the filing of a complaint in Pennsylvania state court, and then followed by the removal of the state case to federal court in the Western District of Pennsylvania. Additionally, a review of this opinion suggests its holding appears to be in the minority of district court opinions in this Circuit. *See Monzo v. Bazos, M.D.,* 313 F.Supp.3d 626, 632-33 (E.D. Pa 2017) (collecting cases).

Furthermore, this Court finds the decisions in *Monzo,* 313 F.Supp.3d at 633 and *Unlimited Tech., Inc. v. Leighton,* 266 F.Supp.3d 787 (E.D. Pa 2017) to be highly persuasive on this issue. Both held that, as a matter of procedure rather than substance, the first-filed rule relates to the state court filing date rather than its removal date to federal court. *Id.* "Once a case is removed, the federal court takes it as it is. The case proceeds as if it originally had been brought in federal court. It does not start anew." *Monzo,* 313 F.Supp.3d at 632. Thus, where one of those two cases was removed from state court to federal court, the "better approach is to relate the removal date back to the state court filing date." *Unlimited Tech.*, 266 F. Supp. 3d at 793.

the Amended Complaint "effectively re-started the Oklahoma Action from scratch." *Id.* One consideration in a first-filed analysis is whether the second-filed action is further along than the first-filed suit. *Koresko*, 403 F. Supp. 2d at 399. However, here, the Court finds EQT's argument unpersuasive because "the [relevant] date for purposes of the first-filed rule is when the case is filed, not when any amended complaint is filed." *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011). *See also Grodko v. Teva Pharm. Indus. Ltd.,* No. CV 17-3743, 2018 WL 10847659, at *3 (E.D. Pa. Apr. 10, 2018) (same). Put simply, both this action and the Oklahoma Action are at the same procedural stage, *i.e.*, no dispositive rulings beyond the TROs have been issued by either Court and the threshold questions are ripe for a decision. *See Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson,* No. CIV. A. 99-3508, 1999 WL 592399, at *3, n.2 (E.D. Pa. Aug. 5, 1999) (finding second-filed case was not further along because no substantive actions had been taken, and the case was at the "point of a threshold determination of whether it should be dismissed or transferred").

### ii. Whether the Cases are Related

The Court also finds that the cases at issue are substantially similar which further supports the application of the first-filed rule. *Grant v. LM Gen. Ins. Co.*, No. 2:23-CV-01153-CCW, 2023 WL 5105158, at *3 (W.D. Pa. Aug. 9, 2023).

The threshold question is whether the two are "sufficiently similar to permit the application of the first-filed rule." *Sinclair Cattle*, 80 F. Supp. 3d at 559. Courts within the Third Circuit Court of Appeals have adopted either a narrow or flexible approach to determine sufficient similarity. Under the narrow approach, courts

apply the rule where "earlier- and later-filed actions involved the same parties and arose out of the same transaction, agreement, or encounter." *Se. Power Grp., Inc. v. SAP Am., Inc.*, No. 2:20-CV-00398-JMG, 2020 WL 4805352, at *2 (E.D. Pa. Aug. 18, 2020) (citing *Landau v. Viridian Energy PA*, 274 F. Supp. 3d 329, 333 (E.D. Pa. 2017)).

Under the flexible approach, courts look to whether there is a "substantial overlap of the subject matter" between the cases or the "same nucleus of operative fact." *Millhouse v. Smith*, No. 1:15-CV-1644, 2016 WL 3450840, at *4 (M.D. Pa. May 10, 2016), *report and recommendation adopted sub nom. Milhouse v. Smith*, No. 1:15-CV-1644, 2016 WL 3457168 (M.D. Pa. June 20, 2016). Cases do not need to have "identical parties and identical issues." *Id.* The first-filed rule applies to cases that are "substantially similar," and is "not limited to mirror image cases where the parties and the issues perfectly align." *Panitch v. Quaker Oats Co.,* No. CV 16-4586, 2017 WL 1333285, at *2 (E.D. Pa. Apr. 5, 2017). *See also Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.,* No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009) ("[T]he principles underlying the [first-filed] rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one"). Courts should take a flexible approach when considering the similarities between the cases because "[i]f application of the first-filed rule required complete identity of issues and parties, then [parties] in the first-filed action may be incentivized to forum shop and

commence similar but nonidentical actions in other venues." *Sinclair*, 80 F. Supp. 3d at 559 (citing *Villari*, 2009 WL 1845236, at *6).

The Court adopts the flexible approach here and finds the first-filed rule applies to avoid duplicative litigation – both matters include EQT and Wingo, and the claims all arise out of Wingo's potential violation of a non-compete covenant from his new role at Williams. *Compare* NDOK ECF No. 36 (seeking declaratory judgment that the Plan and the non-compete and non-solicitation covenants are unenforceable restrictions on Wingo's ability to work at Williams) *with* ECF No. 1 (seeking declaratory judgment that the Plan and the nondisclosure, non-compete, and non-solicitation covenants are valid and restrict Wingo's ability to work at Williams). The principle reason for the first-filed rule is the "avoidance of duplicative litigation," and these two lawsuits are clearly duplicative. *Colorado River Water*, 424 U.S. at 817. *See also Zelenkofske*, 1999 WL 592399, at *2 ("Plaintiff's claim for breach of the covenants not to compete . . . involves the same legal and factual issues as defendants' claim in the Virginia action for a declaration that the covenants are unenforceable and these claims are clearly 'offshoots of the same basic controversy between the parties.'").

The slight differences between the cases – for example, that Williams is only a party in the Oklahoma Action – do not preclude the first-filed rule here because the parties in both actions are litigating over the same subject matter: whether Wingo should be permitted to work at Williams under the Plan. *See Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017) (affirming application of first-filed rule

where a party and claims differed between two otherwise substantially similar cases); *Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*, No. 2:19-CV-00307, 2020 WL 1808270, at *13 (W.D. Pa. Apr. 9, 2020) (applying first-filed rule where subject-matter overlapped, but parties and claims differed).  *See also Catanese*, 774 F. Supp. 2d at 689 ("[O]verlapping subject matter is the key" to the first-filed rule).

### iii.  Anticipatory Filing

EQT next argues that the anticipatory-filing exception applies here and that the Court should disregard the first-filed rule.  ECF No. 37 at 9.  Again, the Court disagrees.

An exception to the first-filed rule is when a party initiated a suit in one forum in anticipation of the other party's imminent suit in another forum.  *Univ. of Pennsylvania*, 850 F.2d at 977.  The type of gamesmanship and bad faith this exception is designed to protect against is not present here, and the Oklahoma Action was not anticipatory.

To constitute an anticipatory suit, the plaintiff in the first-filed action must have filed the action after receiving "specific, concrete indications that a suit by the [opposing party] was imminent."  *Cypress Ins. Co. v. Mickens Transportation Specialists*, No. CV 17-246, 2017 WL 1541892, at *3 (W.D. Pa. Apr. 28, 2017) (quoting *Sinclair Cattle*, 80 F. Supp. 3d at 561).  Additionally, "[s]ome evidence that a first-filed case was filed for the purpose of forum shopping or in bad faith is necessary before courts find it was improperly anticipatory, and therefore warranted a departure from the first-filed rule."  *Koresko*, 403 F. Supp. 2d at 401.

13

EQT first argues that since Williams filed the Oklahoma Action after Wingo received EQT's June 11, 2025 cease and desist letter ("June 11 Cease and Desist"), the Oklahoma Action is anticipatory. ECF No. 37 at 10. There are two issues with this argument. First, "the mere fact that an entity in receipt of a cease and desist letter files a lawsuit does not render that lawsuit 'anticipatory.'" *Oak Assocs., Ltd. v. Palmer*, No. CIV.A.05-4210, 2006 WL 293385, at *4 (E.D. Pa. Feb. 7, 2006).

Second, the June 11 Cease and Desist letter does not constitute a threat of imminent litigation because it does not contain any concrete deadlines or information about when/where EQT planned to sue. It simply reads: EQT "will not hesitate to enforce its legal rights and vigorously protect its interest in these matters," and that EQT "expressly reserves all rights and remedies . . . including the right to commence litigation proceedings against [Wingo], Williams, and others."[3] However, to be an "imminent threat of litigation," the warning must include "specific notice . . . about when or where [the company] would sue." *St. Paul Fire & Marine Ins. Co. v. R&Q Reinsurance Co.,* No. CV 15-5528, 2016 WL 3087379,

---

[3]    EQT's June 11 Cease and Desist says, in relevant part: "[EQT] is undertaking an investigation into [Wingo's] conduct and will not hesitate to enforce its legal rights and vigorously protect its interests in these matters. [EQT] expressly reserves all rights and remedies under any applicable laws, agreements or otherwise, including the right to commence litigation proceedings against [Wingo], Williams, and others related to the matters described herein, including, among other things, emergency proceedings to obtain a temporary restraining order and injunction, to seek recovery of damages or to otherwise enforce [Wingo's] obligations and other rights owed to [EQT]. To this end, [Wingo is] on notice of [his] agreement in the Plan and elsewhere of [EQT's] rights to, in addition to its ability to pursue all other remedies, obtain equitable relief against [Wingo] for a breach or threatened breach of your restrictive covenants, [EQT's] right to recover its costs and attorneys' fees, and that any obligations [Wingo has] breached will be extended and tolled." ECF No. 1-2 at 6.

at *4 (E.D. Pa. June 2, 2016) (finding no imminent threat of litigation where letter stated company "does not (and will not) promise to wait for any specified time period to elapse before acting on its rights" because there was no concrete notice of when or where it would sue).  *See also Novo Nordisk Inc. v. Temple*, No. CV 16-1509, 2016 WL 11970480, at *3 (W.D. Pa. Nov. 2, 2016) (finding lawsuit was filed "in response to specific, concrete evidence of an imminent suit" where other party said it would take no action against party "before 6:00PM"); *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.,* 669 F. Supp. 2d 613, 623 (W.D. Pa. 2009) (finding bad faith when party filed suit after receiving letters that "clearly indicated that suit would be filed in the Court of Common Pleas of Beaver County, Pennsylvania, if arrangements had not been made to satisfy the outstanding invoices by July 7, 2009").  Simply having a vague threat of litigation "in the air" does not make a lawsuit anticipatory.  *Tatro*, 153 F. Supp. 3d at 726–27 ("There is no evidence of any deadline by which Tatro had to respond or face imminent suit.").

The concrete deadline is crucial – this exception to the first-filed rule is designed to protect against a lawsuit being filed during settlement negotiations when the other party is lulled into a false sense of security.  *See Baird v. Meyers, Roman, Friedberg & Lewis, Co., LPA*, 700 F. Supp. 3d 249, 264 (E.D. Pa. 2023) (finding "double dealing" – where a party was negotiating settlement while preparing a complaint in anticipation of a lawsuit – warranted a departure from the first filed rule); *Unlimited Tech.*, 266 F. Supp. 3d at 794 (same).  None of those concerns are present here as the parties were not in a set negotiating period.  *See*

*Oak Assocs.*, 2006 WL 293385, at *4 ("The correspondence before the Court does not indicate that the parties were engaged in meaningful settlement discussions such that Defendants were duped into believing that the disagreement between the parties would be resolved amicably").

In fact, EQT's letter specifically did *not* invite negotiation and instead presented Wingo with an ultimatum: either Wingo delays his start date by an entire year or EQT will ultimately sue.  ECF No. 1-2 at 5.  The United States District Court for the Eastern District of Pennsylvania found when faced with a similar ultimatum, a party "is not required to unilaterally disarm and allow the party asserting the demand to control the choice of forum."  *Koresko,* 403 F. Supp. 2d at 403 (finding a lawsuit filed after a demand letter presented an ultimatum via a large financial demand and a short time-frame for resolution was not anticipatory).  As EQT has pointed out, Williams said something similar – "What else was Williams to do [than file the Oklahoma Action] when EQT interfered with its efforts to employ Mr. Wingo and threatened legal action against it directly over the clearly unenforceable covenants?"  ECF No. 37 at 10 (citing ECF No. 35 at 7-8).  In EQT's version of events, anything short of a capitulation to its demands would be an anticipatory lawsuit.

Finally, as Williams had "legitimate reasons" for filing in Oklahoma, the mere fact that Oklahoma might have more favorable law, as EQT argues, does not

16

in-and-of-itself make an action anticipatory or show evidence of forum shopping.[4]
*Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*, 416 F. Supp. 2d 1048, 1052 (E.D. Pa. 2006) ("Weyerhaeuser's headquarters were also located in Washington, which provided legitimate reasons for filing in that district"); *Stone Creek Mech., Inc. v. Carnes Co.*, No. CIV.A. 02-CV-1907, 2002 WL 31424390, at *3 (E.D. Pa. Oct. 25, 2002) (applying first-filed rule where there was "no evidence that Defendant was *solely*, or even primarily, motivated by the desire to avoid negative law in the Third Circuit or seek shelter under more favorable law in Wisconsin") (emphasis added). Williams' legitimate reasons for choosing Oklahoma are that it is headquartered in Oklahoma, and Wingo lives and works in Oklahoma.  If it is later found that Wingo is breaching the Plan, he would be doing so by competing against EQT in the Oklahoma market.  *See DePuy Synthes Sales, Inc.*, 2013 WL 5816328 at *13 ("[Plaintiff] provided no evidence that Gill engaged in forum shopping when he filed in Washington, the state where he lives and which has the most connections to the matter"); *D&L Dist., LLC v. Agxplore Intern., LLC*, 959 F.Supp.2d 757, 771 (E.D.Pa.2013) (finding litigating in "familiar forum" does not establish bad faith); *IMS Health, Inc. v. Vality Tech. Inc.*, 59 F.Supp.2d 454, 464 (E.D.Pa.1999) (applying first-filed rule where company was headquartered in first-filed district).

## V.    Appropriate Forum

---

[4]    Nor does the fact that the Oklahoma Action is a declaratory judgment in and of itself make the lawsuit anticipatory, as EQT suggests, because while "a declaratory judgment action may demonstrate the anticipatory and preemptive nature of a first-filed suit," the first-filed rule has "routinely been applied to cases where the first-filed case is an action for declaratory judgment." *Pep Boys, Manny, Moe & Jack v. Am. Waste Oil Servs., Corp.*, No. 96-CV-7098, 1997 WL 367048, at *6 (E.D. Pa. June 25, 1997). *See also Synthes*, 978 F. Supp. 2d at 455–56 ("That the California action is for a declaratory judgment does not supply a basis for not applying the first-filed rule").

The next question is whether the Western District of Pennsylvania is the appropriate forum despite the first-filed rule given the forum-selection clause in the Plan selects this District.  ECF No. 1-1 at 18.  Valid forum selection clauses are another recognized reason to depart from the first-filed rule.  *Zanghi v. FreightCar Am., Inc.*, 38 F. Supp. 3d 631, 639 (W.D. Pa. 2014).

While forum-selection clauses are prima facie valid in Pennsylvania*, Nemo Assocs., Inc. v. Homeowners Mktg. Servs. Int'l, Inc.*, 942 F. Supp. 1025, 1028 (E.D. Pa. 1996), the Parties here are disputing more than the validity of the forum-selection clause – they dispute whether the Plan is a valid contract at all.  EQT argues that both the Plan and forum-selection clause are valid.  ECF No. 37 at 11-13. *See also* ECF No. 39 at 4.  In contrast, Wingo argues that the Plan itself is not a valid contract so the forum selection clause cannot control the location.  ECF No. 41 at 8 ("[T]he forum selection clause is not contained in a valid contract. The Plan containing the forum-selection clause is not a valid contract for many reasons including the lack of consideration, the fact that it recites by its own terms it recites that it is not a contract, and the fact that EQT reserved the unilateral right to amend the Plan") (citing ECF No. 1-1 at 17) ("Neither the adoption nor the maintenance of the Plan shall be deemed to constitute a contract, implied or expressed, between the Company and any Participant").

This is a question that must be decided by the District Court for the Northern District of Oklahoma as the forum of the first-filed case.  The validity of the forum-selection clause under the Plan is inextricably linked to the fundamental questions

of the case, so it is best suited for the first-filed Court. In a similar case, the District Court for the Eastern District of Pennsylvania found which Court was appropriate under the first-filed analysis, and then directed the question of whether the forum selection clause was valid to that forum. *Salaman v. United Cap. Funding Corp.*, No. CV 16-1826, 2017 WL 616549, at *5 (E.D. Pa. Feb. 14, 2017) ("Thus, the Court defers its decision on the parties' pending Motions, and stays this case, until the Middle District of Florida decides the related questions of whether the forum selection clause in the Florida action is valid and binds Salaman").

Deferring to the first-filed Court on the question of appropriate forum is a common approach in other jurisdictions as well and "guards against duplicative venue rulings." *Monroe Staffing Servs., LLC v. Whitaker*, No. 20-1716, 2022 WL 684714, at *8 (S.D.N.Y. Mar. 7, 2022). *See also Mann Mfg., Inc. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir.1971) ("Once the likelihood of substantial overlap between the two suits ha[s] been demonstrated, it [i]s no longer up to the [later-filed court] to resolve the question of whether both should be allowed to proceed."); *First Nat'l Title Ins. Co. v. Entrust Enters., LLC*, 2022 WL 393198, at *4 (E.D. Tex. Jan. 7, 2022), *report and recommendation adopted,* No. 4:21-CV-462, 2022 WL 386090 (E.D. Tex. Feb. 8, 2022) ("District courts in Texas routinely find that a later-filed court should not determine whether a forum selection clause trumps the first-to-file rule, and that the question of forum should be resolved by the first-filed court"); *Prince Mfg. Corp.*, No. 4:18-CV-04078, 2019 WL 11073225, at *9 (D.S.D. Mar. 27, 2019) ("This court need not consider if there is a valid forum-selection clause because the

first-filed issue resolves the matter"); *Comcast Corp. v. Rovi Corp.,* No. 16-CV-3852, 2016 WL 4991625, at *3 (S.D.N.Y. Sept. 16, 2016) ("Litigants who believe that a forum selection clause governs an action brought in an alternative forum should first seek to resolve the venue issue in the first-filed forum"); *S & B Eng'rs & Constructors, Ltd. v. Alstom Power, Inc.*, No. No. 3:04-CV-0150, 2004 WL 2360034, at *2 (N.D. Tex. Oct. 19, 2004) (as the first-filed court, finding it was the correct court to determine whether a forum selection clause required a transfer).

Accordingly, the Court defers its decision on the appropriate forum and validity of the forum-selection clause under the Plan to the District Court for the Northern District of Oklahoma as the first-filed Court.  This is the only decision the Court is deferring.  Until a decision is reached on the appropriate forum, the case is STAYED.  *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737 (3d Cir. 1983) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").  *See also Chavez,* 836 F.3d at 220 (stating Courts have the Power to stay case under the first-filed rule).

The Court is aware that this case may ultimately be decided in this District by virtue of a valid forum-selection clause in the Plan.  Because venue, however, must be decided in the first-filed forum and because merits-based issues are so tightly interwoven with a proper venue analysis, the District Court for the Northern District of Oklahoma, as the first-filed court, must decide the venue question in the first instance.

## VI. Conclusion

For the reasons set forth above, the Court defers its decision on the appropriate forum and the validity of the forum-selection clause under the Plan to the District Court for the Northern District of Oklahoma as the first-filed Court. Wingo's Motion to Stay (ECF No. 30) is GRANTED in part, and under the first-filed rule, the case is STAYED until the Northern District of Oklahoma makes its decision on the appropriate forum and the validity of the forum-selection clause under the Plan. The remaining pending Motions, including the Motion to Transfer, will be dismissed without prejudice for the parties to refile once the stay is lifted.

DATED this 3rd day of October, 2025.

BY THE COURT:


s/Christopher B. Brown
United States Magistrate Judge

CC:    Hon. Robert J. Colville
       United States District Judge

       All counsel of record, *via ECF*